Well, the first case of the afternoon. 3-0-9-0-7-6-9 Incore Investment Group Appellee by David Napoleon. This is Colonial Acres Healthcare Centre being accounted by Kevin Miller and Jay Schultz.  Before we begin, the plaintiff appellees have filed a motion for leave to cite additional authority with the court just a few minutes ago, I believe. I believe you've received a copy of the motion. Yes, I did, Your Honor. Okay, well the court will grant the motion to cite additional authority, but will grant seven days for your response to said motion. Thank you. Will that be sufficient? Certainly. Okay, very good. And I believe the motion was previously allowed for authority. You may proceed. Very good. Well, may it please the court. I am Kevin Miller and I represent the appellant, which is a nursing home, Colonial Acres Healthcare Centre. And I think the facts can be briefly stated here. They're not in dispute at all. In 2005, Plaintiff Marta Vinson came to our nursing home for rehabilitation. She had been involved in an accident and was injured. She and the nursing home at that time entered into a written contract which recited the responsibilities and the rights of each party. In that contract was a provision that should there be disagreements concerning the healthcare provided, those disagreements would be taken to arbitration rather than to litigation. At the same time, of course, there was in full force and effect sections 306 and 307 of the Illinois Nursing Home Care Act, which essentially prohibited the enforcement of arbitration provisions in this type of a contract. Mrs. Vinson entered the nursing home, was given rehabilitation for approximately three to four weeks, left our facility for a hospital, and about two years later, within two years, filed a lawsuit in the Circuit Court of Whiteside County claiming personal injuries that resulted as a result of the care at the nursing home. It's also undisputed that we answered that complaint upon receiving the summons and complaint. We didn't file an affirmative defense seeking to raise the issue of arbitration, nor did we file a motion to compel it at that time. Instead, we undertook litigation. We conducted one deposition over the next year, two years actually. That was the deposition of the plaintiff. The plaintiff conducted a few depositions of our people as well, and we exchanged written discovery requests. And then on May 9, 2009, the Appellate Court's Second District decided its decision in Fossler v. Midwest Care Center for the first time allowing arbitration clauses to be enforced in nursing home care contracts. Within 31 days, we filed a motion to dismiss this action and to compel arbitration consistent with Fossler. There were a number of issues raised in the court below, a good number of them actually, and the briefs were rather heavy. The issues, however, were all decided in favor of the defendant nursing home, save one. And that issue is, was there a waiver by the nursing home of its right to compel arbitration? And that's the issue that's before you here today. I might add parenthetically that the other issues are also being argued and considered by the Illinois Supreme Court in a case called Carter v. Oden, that is, whether or not we should allow these nursing home contracts to contain an enforceable provision. The only issue here, however, is the waiver issue. I'm sorry, is the same issue before the court in Carter? No, Carter does not have the waiver issue. If I recall correctly, Carter has the waiver issue. Is that the issue that was raised by the appellees as to the, I can't think of the name of the act, the separate act? The Nursing Home Care Act? Yeah, I think so. I'm sorry, I don't understand your question. It requires a separate placement of the arbitration provision. It doesn't ring a bell. I'm sorry, in this case or in the Carter case? In Carter. I don't recall that it was raised in that, but I could be mistaken, I apologize. I wasn't aware of it. But as the court considers the waiver issue in this case, I'd like to just pose a rhetorical question to you three. And the question goes like this. If the nursing home could not have enforced its right at the trial court level, how could it ever be said that we waived that right? If you don't have a right that you can enforce, it does not follow that you can also waive that right, because waiver is a voluntary relinquishment of a known and existing right. An incohate right, of course, is classically defined as something that, a right that is not matured, it is not yet developed, or it is not vested. And in this case, during the pendency of the case at the trial court level, up until the time of the Fossler decision, that's exactly what we had. An incohate right to compel arbitration. It was in existence in the sense that it was in our written contract, but it was not enforceable, it wasn't recognizable, until Fossler came along.  First, because of the language in the statute, and then after the case was litigated for a full year, on April 4, 2008, the 5th District decided a case called Carter v. Oden, the aforementioned case that's now before the Supreme Court. Carter was the only case in any district at that time that dealt with whether or not arbitration clauses could be enforced in nursing home care contracts. So, at the beginning of this case, we had the statute, which clearly would not have allowed enforcement of an arbitration clause. And then, after a year of litigation, we have Carter, which not only dovetails with the statute, but is the only authority in Illinois on point. So, from the time this case was pending up until the Fossler case, a period of, it looks like, 26 months, first, we had a statute that made it impossible for my client to enforce this incohate right to arbitrate, and second, we had a 5th District decision which was binding on every trial court in Illinois because it was the only decision which would have kept us from enforcing it. On the other hand, the case in the 5th District proceeded, or the defendant, I assume it was the defendant, proceeded as though it did have that right. It sought to enforce the right, yes. Okay. Well, probably statutory language didn't stop them. Your Honor, if we look at the procedural posture of both the Carter and the Fossler case, let's consider that carefully. In both of those cases, the nursing home lawyer sought to enforce a right to compel arbitration. And in both of those cases, the trial court said, no, this statute controls. So, yes, there was a… But was there a decision from the courts at the time of your case? Yeah. I'm sorry? Those were decisions later. Your case was already in the mill, so to speak, and you answered. You didn't do an affirmative defense, right? Right. At the time I answered, neither case had been decided by any appellate court. Correct. I'm just asking, does it make a difference that you did not proceed as those other two cases? I don't think so, Your Honor, because the result presumably would have been the same, wouldn't it? There would still be a statute in full force and effect taking away that right, not granting it. And after the Carter case was decided at the appellate court level, there was case law authority that would have taken effect. So, again, if I could… The Fosler plaintiff had the same issues – or Fosler defendant had the same issues in front of it. It also had – Robert had the statute. It had Carter. Yes. Same issues and the same results at the trial court level. That motion to dismiss and compel arbitration was denied. But they appealed it. I mean… Yes, they did. It's nice that you're talking about that, but I mean the issue is ultimately that they prevailed at some point. Yes. And I guess the crux of this issue is what is your responsibility? What is the defendant's responsibility in this kind of situation to raise that prior to, you know, in the face of all this negative information that you've gotten, essentially? What is your responsibility for maintaining the light that might shine someday? Thank you. At the trial court level, the law was very clear and always has been up until Fosler, the appellate decision that is. Because, again, Fosler took a different approach than I did, the attorney in that case. He filed a motion to dismiss and compel immediately upon receiving the sentence and complaint. But the response was still the same, motion denied, which is why, again, I pose that question to you. If I could not have successfully enforced this right to compel arbitration at the trial court level, how can it ever be said that it was waived? It wasn't a known and existing right at all. It was only an incoherent right. Okay, it was only… But at the time this proceeding commenced, there was no decision out of the fifth and no decision out of the second. You are correct. Okay. So there was only the statutory prohibition. Yes. Which didn't stop these other two cases from proceeding. It did stop them at the trial court level. No, it didn't stop them in terms of when they were summoned with a complaint. You are correct. Filing a response, going forth, challenging that action, challenging that statutory language. Right. Okay, so we can't reason backwards, ex post facto, or not post hoc, excuse me, therefore because of this, can we? You're not arguing that. Because of these two appellate decisions, we didn't have to do a challenge. That's not exactly my position. Okay. My position is because of the statute and then the two appellate decisions, well, especially the first one, there would have been, our efforts to challenge would have been unsuccessful. I don't think there's any doubt about that. At the trial court. At the trial court level. And therefore, I think the trial court in this case improperly considered the relevant period of time, and maybe we can focus to that. The trial court considered what happened from the date of filing, which was March 7, 2007, up until Fosler. And during that period of time, that's what the court looked at to determine whether there was a waiver. But that's the period of time when our right was only in co-hate and couldn't be enforced. The relevant period of time is 31 days it took us, as soon as the Fosler case was decided, to recognize that there had been a change in the law, recognize that now we did have a valid right and could in good faith bring it to the court's attention, and we did. 31 days. That's the relevant period of time that we all should be talking about here, to determine if there's a waiver or not. Because waiver is the voluntary relinquishment of a known and existing right. We didn't have a right to enforce arbitration before Fosler was decided May 9, 2001. I tend to think that sometimes less is more, so unless your honors have any more questions, I'd like to rely on our brief. We tend to agree with you most of the time. And I'll conclude my remarks early, unless you have questions for me. I don't believe we do. Thank you, Mr. Miller. Thank you. Mr. Monteleone. Thank you, Your Honor. May it please the Court, I am David Monteleone. I represent Amcor Bank. In this matter, Amcor is the guardian of the estate of Marta Benson. Your Honor, I'd like to address a question that Justice Litton had for Mr. Miller. The act that I believe you were questioning him about isn't our brief. It's the Illinois Health Care Arbitration Act. That Arbitration Act says that health care provider includes nursing home. That Health Care Act says that the arbitration agreement, in order to be valid, cannot be part of a larger contract. It has to be a separate instrument in and of itself with its own consideration. It has to have statutory language of 3 16th inch height to clearly advise the patient, or in this case the nursing home resident, that they are signing an arbitration agreement. Also, upon discharge, the resident or patient has to be handed a copy of the arbitration agreement and told, in writing and orally, that they have 60 days after discharge to revoke the agreement. Didn't they say that you waived that argument by not presenting it to the trial court? Your Honor, it was presented to the trial court. Judge Pentewick, the trial court judge, need not have reached that argument because she decided the issue of waiver. There were more issues, instances of... I understand that. I just thought that the defendants argued that you waived that by not presenting it, but you did present it. It was presented, as were a number of other things that I'm prepared to discuss today. Let me begin with where counsel left off. The contract itself, which is attached to the pleadings in the record as an exhibit, states, written notice of the demand for arbitration must be given to the other party not more than 75 days after being notified of the claim. In this case, and also in the exhibit, is a letter from opposing counsel stating, we knew about the claim when the date was filed, when the case was filed, meaning March 2007. The nursing home had 75 days then from March 7, 2007, within which to demand arbitration under its own contract. It waited until June 5, 2009. In that letter, where they are attempting to excuse the 27-month delay, they assert that it was a legal impossibility for us to demand arbitration any sooner than the Fosler decision. They cite no legal authority to Justice Pentewick or to this Honorable Court for authority that it was a legal impossibility. The trial court rejected this argument, and the reasoning that the trial court used was five-fold. Number one, there was no third district ruling on this matter. In fact, until Carter was decided a year after this litigation began, there was absolutely no case in Illinois on either side of the issue. So neither Carter nor Fosler could have been an impediment to the defendant in this case from doing exactly what the defendants did in both Carter and Fosler. That is, they filed affirmative defenses asserting a right to arbitration, in spite of the fact that there are two statutes in the Illinois Nursing Home Care Act, 3-605 and 3-606, that specifically prohibit a nursing home resident from waiving his or her right to a jury trial. So before Carter, there's absolutely no Illinois case law standing in their way. Furthermore, the defendant provided no explanation to the trial court whatsoever why they did not do the exact same things that the defendants in both Carter and Fosler did. If we take Mr. Miller at his word that it was an unenforceable provision of the contract at the time the contract was entered into, the contract contains a savings clause that states, this agreement, if, I'm sorry, I'm going to quote it directly, in case any one or more of the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other part of this agreement, and, here's the important part, this agreement shall be construed as if such invalidity or unenforceable provision had never been contained herein. So if this was an unenforceable right at the time of its making, the savings clause says it's stricken. We cited a couple of cases to this court that date back to the late 1800s, and it's still good law, and it stands for the proposition that a contract which is unenforceable at the time of its making cannot be made enforceable by a change in the law after it's made. We cited those cases to this court. So, also, I believe this court should be aware, the argument that this was an inchoate right or this right didn't exist at the time of its making was not an argument that they made to the trial court judge. On the contrary, they specifically stated that New Beginning only recognizes that the arbitration clause was unenforceable by law, not that it did not exist. So they acknowledged the existence of the right to the trial court. Here, they are making an argument simply out of whole cloth that the right didn't exist, it was an inchoate right. Again, referring this court back to the 28-page contract, it said that once a claim is made, they have 75 days within which to demand arbitration. If there was any doubt in their mind of whether a claim was being made, certainly when AMCOR filed a complaint on behalf of Mrs. Vinson, by their own acknowledgement, they were then aware that there was a claim being made. Your Honor, another issue that I'd like to bring to the court's attention, as time permits, is the proper standard of review. The six divisions of the 1st Appellate District all adopt an abuse of discretion standard of review for reviewing these types of cases. The 2nd, 4th, and 5th districts use a de novo standard of review. I would like to first address the issue of why I believe an abuse of discretion is the proper standard. Glazer's Distributors of Illinois is a case that we cited, and there the 1st District Appellate Court said, the trial court must necessarily engage in a factual inquiry to determine if a party's actions constitute wavering. And in that case, as in this, there was no evidentiary hearing. However, the standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the trial court's order. If the trial court's decision is without an evidentiary hearing and without findings on any factual issue, de novo review is appropriate. There is another body of appellate review that states, if material facts are in dispute or if reasonable lines could draw more than one inference from undisputed facts, then the matter becomes a question of fact. The 3rd District Appellate Court has twice articulated and echoed that sentiment. First, in R.A. Cullinan and Sons, which is a 1991 3rd District case. Secondly, in Hamill v. The Industrial Commission in 1994. Material facts in this case are not in dispute, however, so Judge Pintoit did not conduct an evidentiary hearing. However, the trial court was called upon to determine the legal effect of those facts and did so by finding that the defendant's actions clearly imply a waiver of the arbitration clause. Admittedly, Hamill and R.A. Cullinan were both cases involving the Industrial Commission. However, there is no logical reason why a decision of the circuit court should be afforded less deference than that afforded to a decision of the Industrial Commission. Your Honor, in this case, the nursing home filed an answer, filed a jury demand, asserted two counterclaims against Mrs. Benson. The first, that she was contributorily negligent for causing her own injury. The second, that she failed to mitigate her own damages. They engaged in what Judge Pintoit called extensive discovery, propounding multiple sets of Rule 213 written interrogatories, propounding multiple requests to produce under Rule 214. They made the discovery deposition of Mrs. Benson. We made the discovery deposition of nurses and CNAs. The nursing home issued subpoenas. They made numerous court appearances. They had an agreed HIPAA order entered in order to obtain all of Mrs. Benson's medical records. As late as April 2009, just two months before they first raised the issue of arbitration, they requested the production of records from 46 of Mrs. Benson's medical providers. Arbitration was raised for the first time 27 months into the case after making full use of its subpoena power and discovery tools afforded to a litigant, but not afforded to a party to arbitration. Lastly, Your Honor, if the purpose of arbitration is to expeditiously resolve disputes at the lowest possible cost, neither of those twin goals is achievable at this point. The defendants have acted so inconsistently with their right that, as Justice Judge Pintoit has stated, they clearly imply an intent to abandon that right. As time permits, I would like to discuss some other things. First, the appellate court is allowed to affirm on any grounds contained in the record, and we asserted four grounds for affirming Judge Pintoit's order. The first, of course, is the conduct of the defendant in engaging in active participation for 27 months. The second, that they failed to demand arbitration within 75 days of learning of the claim as per their own contract, which they drafted. Section 3 of the Federal Arbitration Act is also another ground, and so is noncompliance with the Illinois Healthcare Arbitration Act. I'd like to address Section 3 of the Federal Arbitration Act. That states that in any suit or proceeding brought in any court of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall, on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. So even if this is a matter which is preempted by the Federal Arbitration Act, and parenthetically, that issue was argued last week on January 14th in the Illinois Supreme Court, even if the Federal Arbitration Act preempts the Illinois Nursing Home Care Act, if the applicant for the stay, in this case the nursing home, is in default in proceeding with the arbitration, then the motion to compel arbitration must be denied. In this case, they are in default, as Judge Pentewick said, for actively participating in litigation and conducting extensive discovery over 27 months, or because they failed to adhere to the terms of the contract which they drafted, that the demand for arbitration must be given not more than 75 days after they learned of a claim, or because they are in default for noncompliance with the Illinois Healthcare Arbitration Act, which, had they complied, would have given Mrs. Benson and AMCOR 60 days within which to revoke the arbitration agreement. Thank you. Okay. Thank you, Mr. Monteleone. I have Mr. Scholl will be doing a reply. Good afternoon. May it please the Court? My name is Jay Scholl, and I also represent the defendant and appellate in this case. I think that there are several issues that are important to address following the plaintiff's argument. The first is that it's based upon an improper calculation of the time period that's applicable in this case. The plaintiff again and again mentioned the 27-month time period, but what's really at issue here is this 31-day period from the time at which our incopate right became enforceable to the time at which we filed our motion to dismiss and to compel arbitration. I think in that time it's important to note that we presented no substantive issues to the Court, and all this discovery that the plaintiff is discussing occurred prior to that time. After the FOSTA decision was handed down, between the time that we learned of the decision, by the time it crossed our desks and we had a motion to compel arbitration on file, that was an absolutely reasonable time in which we didn't advance anything substantive to the Court or in discovery. Secondly, the plaintiff mentions the Health Care Arbitration Act. What we were saying in our brief is not necessarily that that wasn't an argument that was presented to the trial court, but rather it's not one that's on appeal in this case. The issue that's on appeal in this case is simply the issue of waiver. Because the plaintiff says that we can decide anything on any grounds in order to affirm this, why wouldn't we be able to do that here? Well, there were two main issues presented to the trial court. The first was the validity of the contract in which the Court underwent an analysis of whether the Illinois Nursing Home Care Act was preempted by the Federal Arbitration Act. And then the other analysis the Court underwent was in deciding the issue of waiver. The only issue appealed in this case was waiver. And frankly, whether the contract was valid is not an issue because the trial court determined that it was valid and there was no cross-appeal on that issue. If we want to affirm, can we not do that on the basis of that statute? It was raised in the trial court, correct? Or was it? I believe so, yes. Well, I don't think that we can affirm on that basis. Simply because the trial court didn't address it, or what? Well, because it's not an issue raised on appeal. The trial court... Well, it was by the appellee. There was no cross-appeal initiated. True, true. So my understanding is that because there was no cross-appeal initiated, that that's not an issue that is properly presented to this Court. Third, I think it's important to address the standard of review in this case. The third district has already held once before in the case of LaHood, which is cited in our brief, that the appropriate standard of review in a case involving a motion to dismiss and appeal arbitration is a de novo standard of review. In our brief, we point out that four districts, including this one in Illinois, apply the de novo standard of review. And the plaintiff cites to the first district case, the appellate court, which is in the minority, to support his position. And I haven't heard any substantive reason why the court should depart its de novo review. And in fact, if the court takes a look at the circumstances of this case, a de novo review is appropriate. The trial court did not hold an evidentiary hearing. The court rather just looked at the record to determine what was happening. And their conclusions were ones as a matter of law. Fourth, I think it's important to note that the plaintiff does nothing to rebut that we had an incohate right in this case. We had an incohate right that was just simply unenforceable until the decision of Fosler. And finally, the contract incorporated language from Rule 48A of the American Association of Arbitrators, which provided that participation in the judicial process cannot waive a party's right to arbitration. That language incorporating that rule was included in the contract. The plaintiff attempts to minimize that by citing a State Farm case in which the court starts by saying the right to arbitrate is one that should be liberally construed. And then it takes some liberties if other courts have considered this issue. The courts that have considered similar language as Rule 48A, or the language of Rule 48A, have done so in sort of a dual analysis, saying that under the common law, the defendant or the party seeking arbitration did not waive their right to arbitration, but also we could have looked at it under this language of the contract. Thank you. Thank you, Counsel Hall, for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition.